### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SERGIO CAMPOS, | |
| | Case No. |
| Plaintiff, | Judge |
| | Magistrate Judge |
| v. | |
| | |
| PRINCIPAL MANUFACTURING COMPANY, | JURY TRIAL DEMANDED |
| | |
| Defendant. | |

### COMPLAINT

Plaintiff Sergio Campos (herein "Mr. Campos"), through his attorneys Barlow, Kobata & Denis, LLP, for his Complaint against Defendant Principal Manufacturing Company (herein "PMC"), states as follows.

### NATURE OF THE ACTION

1.      This lawsuit arises under the Americans With Disabilities Act, as amended, 42 U.S.C. §12101 et seq. (herein, the "ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. (herein the "ADEA"). Mr. Campos is a former employee of the defendant Principal Manufacturing Company (herein "PMC"). Mr. Campos is seeking damages and injunctive relief to redress employment discrimination practices, PMC's failure to accommodate him, and retaliation by the Defendant PMC. An Illinois state law retaliatory discharge/wrongful discharge claim is also alleged.

### JURISDICTION

2.      Federal jurisdiction arises under the provisions of the ADA, and also under the ADEA, 29 U.S.C. §621 et seq., and federal question jurisdiction, 28 U.S.C. §1331 and §1343.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 based on federal question jurisdiction.

3.      This lawsuit also arises under the Illinois common law based on the retaliatory and wrongful discharge of Mr. Campos because he filed a worker's compensation claim. There is supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. §1367.

## VENUE

4.      Pursuant to 28 U.S.C. §1391, venue lies in the Northern District of Illinois in that Mr. Campos is a resident in this District, Defendant PMC is engaged in a business in this District which is located in Broadview, Illinois, and a substantial part of the alleged events or omissions giving rise to the claims occurred in this District.

## PARTIES

5.      Mr. Campos is a resident of Chicago, Illinois. His date of birth is August 28, 1948. He worked for the Defendant PMC between August 29, 2005 and June 26, 2015 at PMC's Broadview, Illinois plant. He was worked as a truck driver.

6.      Since at least January 1, 2009, the Defendant PMC has been a corporation authorized to do business in Illinois, has been conducting business in Broadview, Illinois, and has continuously been and is now an employer engaged in interstate commerce or an activity affecting commerce, and it was an "employer" within the meaning of the ADA and ADEA. Defendant PMC was also an employer within the meaning of 29 U.S.C. §§630(b), 630(g), and 630(h) of the ADEA.

7.      Since at least January 1, 2009 Defendant PMC employs or has employed more than twenty (20) employees within the meaning of the ADEA. In 2014 Defendant PMC employed more than 200 employees within the meaning of the ADA.

8.      In 2014 and 2015 Mr. Campos was an "employee" within the meaning of the ADA and ADEA.

## PROCEDURAL BACKGROUND

9.      On June 30, 2015, Mr. Campos filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA.

10.      On August 7, 2015, Mr. Campos filed a Charge of Discrimination with the EEOC alleging violations of the ADEA. Mr. Campos' date of birth is August 28, 1948. PMC fired Mr. Campos on June 26, 2015. At the time PMC fired Mr. Campos he was 66 years old.

11.      Mr. Campos timely filed his Charges of Discrimination with the EEOC alleging violations of the ADA and ADEA, respectively.

12.      The EEOC Charge of Discrimination that Mr. Campos filed were cross-filed with the Illinois Department of Human Rights. The Charges of Discrimination that Mr. Campos filed were timely filed with the Illinois Department of Human Rights.

13. On January 20, 2016, the EEOC issued Mr. Campos a Notice of Right to Sue. A true and correct copy of the EEOC Notice is attached hereto as Exhibit A and incorporated herein.

14.      This action has been timely filed by Mr. Campos within ninety (90) days of Mr. Campos' receipt of the EEOC's Notice of Right to Sue.

15.      Mr. Campos has fulfilled all conditions precedent to the institution of this lawsuit against the Defendant PMC under the ADA and ADEA.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

16.      Paragraphs 1-2 and 4-15 of this Complaint are realleged and incorporated as though fully set forth herein.

17.     When Mr. Campos was hired as a truck driver, he was qualified to work as a truck driver. At all pertinent times since approximately 2005 Mr. Campos was qualified to work as a truck driver.

18.     Between August 29, 2005 and December 2014, Mr. Campos performed his job duties as a truck driver in a satisfactory manner.

19.     On November 28, 2012 and again on December 30, 2013 the Defendant PMC reviewed Mr. Campos' job performance.

20.     In Mr. Campos' November 28, 2012 performance review that the Defendant PMC wrote, the Defendant PMC, among other things, stated:

> a.     that regarding his Section 1: Major Duties and Responsibilities, he received a rating of 16, and that "Sergio does a fine job on making sure his truck runs good and notifies me if something is not working properly," "Sergio does a good job on obtaining the receipts/packing slip and signatures from our vendor," and "Sergio does a good job making sure everything is secure in his truck:"
>
> b.     that regarding his Section 4: Personal Performance, he received an 18 rating, and that "Sergio attendance and punctuality is good," "Sergio has always been a team player," "Internal/External - I only get positive feedback from about Sergio," and "Sergio always follow through and completes with all task that is given to him;" and c. he was given an "overall rating" of 38 out of a 44 rating "Total Achievable."

21.     In Mr. Campos' December 30, 2013 performance review that the Defendant PMC wrote, the Defendant PMC, among other things, stated:

a.    that regarding his Section 1: Major Duties and Responsibilities, he received a rating of 17, and that "Sergio does a fine job on making sure his truck runs good and notifies me if something is not working properly," "Sergio does a good job on obtaining the receipts/packing slip and signatures from our vendor," and "Sergio does a good job making sure everything is secure in his truck;"

b.    that regarding his Section 4: Personal Performance, he received a rating of 18, and that "Sergio attendance and punctuality is good," "Sergio has always been a team player," "Internal/External - I only get positive feedback about Sergio," and "Sergio always follows through and completes with all task that is given to him;" and c. he was given an "overall rating" of 39 out of a 44 rating "Total Achievable."

22.    At all pertinent times in 2014, Mr. Campos performed his job duties as a truck driver in a satisfactory manner. At all pertinent times in 2015, Mr. Campos performed his job duties as a truck driver in a satisfactory manner.

23.    In 2009 Mr. Campos was diagnosed to have coronary artery disease and underwent coronary artery bypass surgery on February 23, 2009. At the time in 2009 Dr. Kishin Ramani from the Heart Care Centers of Illinois was one of Mr. Campos' doctors.

24.    A letter from Dr. Kishin Ramani dated April 9, 2009 was sent to and received by Defendant PMC in approximately April 2009. That April 9, 2009 letter stated, in part, that Mr. Campos was in Dr. Ramni's "office for his cardiovascular care. He has been diagnosed to have coronary artery disease and underwent coronary artery bypass surgery on February 23, 2009."

25.     Since at least its receipt of Dr. Ramani's April 9, 2009 letter, the Defendant PMC was aware that Mr. Campos had been diagnosed with coronary artery disease.

26.     After he received his 2009 coronary artery disease diagnosis, Mr. Campos was also diagnosed by one of his doctors as having diabetes. Defendant PMC was aware that Mr. Campos has been diagnosed as having diabetes.

27.     Following his surgery in 2009, Mr. Campos' doctors prescribed certain heart and diabetes medications for Mr. Campos to take.

28.     Mr. Campos has taken those heart and diabetes medications in 2010, 2011, 2012, 2013, 2014, and 2015.

29.     Some of the medications that Mr. Campos took required him to take those medications at four hour intervals and to take those medications when or after he ate a substantial meal.

30.     Starting in 2009 and continuing in 2010, 2011, 2012, 2013, and 2014, Mr. Campos typically took his heart medications at 6:00 AM., and in the mid-afternoon when, with, or after he took his lunch and had a substantial meal, he took his heart and diabetes medications around 2:00 p.m.

31.     Between April 2009 and December 2014 the Defendant PMC was aware that Mr. Campos typically took his lunch in the mid-afternoon and had a substantial meal around 2:00 p.m. and then took his heart and diabetes medications.

32.     At no time between April 2009 and December 2014 did Defendant PMC tell Mr. Campos that he was taking his lunch at the wrong time, or interfering with the deliveries, or that his deliveries were being delayed, or that the timing of his mid-afternoon lunch times were

improper, or that he was manipulating his lunch times, or that he was delaying the entire delivery system.

33.     In approximately February 2011 Mr. Campos had a work-related injury involving his shoulder. He filed a request to be paid worker's compensation benefits. In 2012 and again in approximately August 2013 he incurred another work-related injury, and he requested to be paid worker's compensation benefits.

34.     On approximately August 28, 2014, with respect to his shoulder injury, Mr. Campos' doctor gave him a diagnosis of "rotator cuff impingement syndrome," and PMC was notified of that diagnosis.

35.     On approximately September 26, 2014, with respect to his shoulder injury, Mr. Campos' doctor gave him a diagnosis of "brachial neuropathy" and "brachial plexopathy," and PMC was notified of that diagnosis.

36.     Regarding his work-related shoulder injury, Mr. Campos underwent shoulder surgery. That shoulder surgery was not successful, and his doctors recommended that he undergo additional shoulder surgery.

37.     PMC and its agents objected to Mr. Campos undergoing additional shoulder surgery.

38.     Upon returning to work in September 2014, Julio Villaba, PMC's Outside Processing Manager, started screaming and yelling at Mr. Campos in a demeaning, disrespectful, and angry tone and acting in a demeaning, disrespectful, and angry manner towards Mr. Campos. Mr. Villaba's facial expressions, hand gestures, and tone of voice exhibited anger, sarcasm, and hostility towards Mr. Campos.

39.     Mr. Villaba did not scream or yell at the other younger drivers, both of whom were in their early thirties. Mr. Villaba did not act in a demeaning, disrespectful, and angry tone, or demeanor, or with facial expressions, hand gestures, and a tone of voice that exhibited anger, sarcasm, and hostility towards other younger drivers, or drivers who did not have a disability, or drivers who had not filed workers compensation claims against PMC.

40.     At the time that Mr. Villaba started screaming and yelling at Mr. Campos in approximately September and October 2014, Mr. Campos was 66 years old, and Mr. Villaba's age was approximately in his mid-thirties or late-thirties.

41.     Mr. Campos complained to Mr. Villaba about his screaming and yelling and demeaning, disrespectful, and angry tone and demeanor. Mr. Campos requested that Mr. Villaba stop his verbal abuse and hostility and to treat Mr. Campos in the same manner that he treated other younger drivers, drivers who did not have a disability, and drivers who had not filed a workers' compensation claim against PMC. Mr. Villaba refused to stop his verbal abuse and hostility, and increased his verbal abuse and hostility, while treating younger drivers, drivers who did not have a disability, and drivers who had not filed a workers compensation claim against PMC more favorably.

42.     When Mr. Campos continued with his hostile tone and demeanor, Mr. Campos complained to Mike Madsen, PMC's Human Resource Director, and requested that PMC's harassment stop and that Mr. Campos be treated in the same manner with respect to his terms and conditions of employment as the other drivers.

43.     Upon information and belief, after Mr. Campos complained to Mr. Villaba and complained to Mr. Madden about Mr. Villaba's discriminatory behavior, Mr. Villaba was not disciplined or counseled regarding Mr. Campos' complaint.

44.     For several years Mr. Campos had received annual written performance reviews. For example, he was given a performance review in November 2012 and another performance review in December 2013. Mr. Campos was not given a written performance review in either 2014 or 2015.

45.     Starting in mid-January 2015 PMC falsely accused Mr. Campos about alleged job duty issues and accused Mr. Campos of not properly taking his lunch between 11:00 A.M. and 1:00 PM.

46.     Mr. Campos told Mr. Villaba and Mr. Madsen that he, Mr. Campos, had been diagnosed with coronary artery disease and diabetes, that Mr. Campos' doctor had prescribed certain medications for Mr. Campos, that Mr. Campos needed to take those medications at prescribed intervals of approximately four hour intervals, that to comply with his doctor's instructions, Mr. Campos needed to take those medications when he had a substantial meal in the mid-afternoon at or around 2:00 p.m., and that he requested to be accommodated and his lunch time scheduling be accommodated and adjusted to comply with his doctor's instructions.

47.     In 2013 and 2014 PMC:

      a.     was aware that Mr. Campos had requested a change in his workplace involving when he was taking his lunch;

      b.     was aware that Mr Campos had requested an adjustment in his workplace involving when he was taking his lunch;

      c.     was aware that Mr. Campos had requested an adjustment in his workplace involving when he was taking his lunch because of his medical conditions; and

9

      d.      had enough information about Mr. Campos' medical condition to determine whether to approve Mr. Campos' requested change in his workplace involving when he was taking his lunch.

48. In 2013 and 2014 PMC approved the time when Mr. Campos was taking his lunch.

49. Starting in 2015 PMC insisted that Mr. Campos take his lunch between 11:00 A.M. and 1:00 P.M.

50. Mr. Campos was able to perform the essential functions of his job with a reasonable accommodation.

51. Among the accommodations Mr. Campos requested was to take his lunch after the 11:00 AM to 1:00 PM time frame and to take his lunch in mid-afternoon around or after 2:00 PM.

52. Approving Mr. Campos' request to take his lunch after the 11:00 AM to 1:00 PM time frame and to take his lunch in mid-afternoon around or after 2:00 PM would not have been prohibitively expensive for PMC and would not have been unduly disruptive to the ordinary conduct of its business.

53. Approving Mr. Campos' request to take his lunch after the 11:00 AM to 1:00 PM time frame and to take his lunch in mid-afternoon around or after 2:00 PM would not involve an undue hardship on PMC.

54. Approving Mr. Campos' request to take his lunch after the 11:00 AM to 1:00 PM time frame and to take his lunch in mid-afternoon around or after 2:00 PM would not have fundamentally altered the nature of PMC's business, did not involve an undue cost or extensive

or substantial disruption to the nature or operation of PMC's business, or a fundamental alteration to the nature or operation of its business.

55.    In deciding not to grant Mr. Campos' request for an accommodation, PMC did not consider the nature and cost of the requested change, adjustment, and/or accommodation, its overall financial resources, the number of employees it employed, or the potential or possible disruption, impact, or fundamental alteration of the nature or operation of its business.

56.    At various times between January and June 26, 2015, Mr. Campos sent text messages to Mr. Villaba telling him where he was with his deliveries and when he was taking his lunch. On some of these occasions, upon been informed of Mr. Campos' delivery schedule and lunch time break, Mr. Villaba told Mr. Campos that what he was doing was either "okay" or "all right."

57.    In telling Mr. Campos that his lunch time breaks were either "okay" or "all right", Mr. Villaba and PMC acquiesced in, agreed, or otherwise confirmed back to Mr. Campos that the lunch time schedule he was taking was acceptable and/or satisfactory.

58.    Despite Mr. Campos' requests for an accommodation, PMC refused to accommodate him.

59.    In 2014 and 2015 PMC had a personnel policy under which employees were not permitted to work unless they were able to work full duty.

60.    On June 26, 2015, PMC fired Mr. Campos. PMC gave Mr. Campos a June 26, 2015 letter informing Mr. Campos of his discharge. The June 26, 2015 letter that PMC gave Mr. Campos described PMC's then reasons for his discharge.

11

61.     PMC submitted a position statement to the EEOC that was dated August 28, 2015. PMC's EEOC position statement contained, among other things, a description of the reasons PMC then said were the reasons Mr. Campos was fired.

62.     In addition to the reasons described in PMC's June 26, 2015 letter for why PMC says it fired Mr. Campos, PMC's August 28, 2015 position statement to the EEOC describes additional reasons for Mr. Campos' discharge.

63.     Between January 1, 2010 and June 26, 2015, Mr. Campos was a qualified individual with a disability within the meaning of 42 U.S.C. #12101(2)(A), (2)(B), and 2(C) of the ADA.

64.     Between January 1, 2010 and June 26, 2015, Mr. Campos had one or more impairments within the meaning of the ADA that substantially limited one or more of his major life activities within the meaning of the ADA. Mr. Campos also had a record of such an impairment.

65.     Mr. Campos' impairments constituted a disability as that term is defined in the ADA.

66.     At all pertinent times, Mr. Campos was qualified to perform the essential functions of his job, with or without a reasonable accommodation, within the meaning of the ADA.

67.     Since at least January 1, 2010, PMC was aware that Mr. Campos had a disability within the meaning of the ADA.

68.     PMC was aware that Mr. Campos had requested to be accommodated regarding the scheduling of his lunch beyond the 11:00 AM to 1:00 PM time frame.

69.     Other truck drivers who worked for PMC were allowed to take their lunch outside of the 11:00 AM to 1:00 PM time period in 2014 and 2015. The other truck drivers employed by PMC did not have a disability within the meaning of the ADA.

70.     Other truck drivers were accorded better terms and conditions of employment than Mr. Campos.

71.     Because of Mr. Campos' disability, PMC discriminated against Mr. Campos regarding his terms and conditions of employment, refused to accommodate Mr. Campos, and retaliated against Mr. Campos because he requested to be accommodated pursuant to the ADA.

72.     PMC violated the ADA by discriminating against Mr. Campos, refusing to accommodate him, and retaliating against him for requesting accommodations, including discharging him.

73.     By its conduct alleged herein, PMC engaged in unlawful employment practices on the basis of Mr. Campos' disability and in retaliation for Mr. Campos' complaints about discrimination and PMC's failure to accommodate him. PMC engaged in this conduct in violation of the ADA.

74. PMC knew and/or showed reckless disregard for whether its conduct violated the ADA. The reasons that PMC gave for Mr. Campos' discharge and for denying him an accommodation were false.

75.     The actions of PMC were taken deliberately and intentionally and with malice and reckless indifference to Mr. Campos' civil rights.

76.     The acts complained of were ratified, authorized, and permitted by PMC and its officers, managers, and supervisors.

77.    Because of PMC's discriminatory actions, refusal to accommodate, and retaliatory actions, Mr. Campos was damaged and has suffered the loss of wages and benefits, humiliation, embarrassment, and other compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Campos respectfully requests that this Court enter judgment in his favor and against Defendant PMC and requests that the Court:

A.    Declare, decree, and adjudge that PMC has violated the ADA;

B.    Grant an injunction against PMC and its officers, managers, and supervisors from violating the ADA and protecting Mr. Campos;

C.    Enter appropriate injunctive relief against PMC and its officers, managers, and supervisors to comply with the ADA and refrain from discriminating against and retaliating against and failing to accommodate Mr. Campos, and interfering with his rights and protections under the ADA and awarding appropriate injunctive relief;

D.    Awarding Mr. Campos backpay, front pay, and other employment benefits he was denied or lost;

E.    Order PMC to pay compensatory and punitive damages in an amount sufficient to punish PMC for its past discrimination and to deter it from continuing with its unlawful practices;

F.    Award pre-judgment and post-judgment interest;

G.    Award Mr. Campos his reasonable attorney's fees and costs; and

H.    Award such other, additional and further relief as the Court deems appropriate under the circumstances, including nominal damages.

## COUNT II
## ADEA CLAIM

78.    The paragraphs 1-2, 4-8, 10-15, 17-22, 36-46, 53-54, 57-59, 67, and 73 are re-alleged and incorporated as though fully set forth herein in Count II.

79.    Mr. Campos has complied with the administrative prerequisites of the ADEA.

80.     Pursuant to the 29 U.S.C. §633(b), Mr. Campos has filed this cause more than sixty days after he filed a Charge of Discrimination with the EEOC.

81.     Younger employees were treated in a more favorable manner with respect to their terms and conditions of employment than Mr. Campos.

82.     Mr. Campos complained about being subjected to discriminatory treatment and discriminatory terms and conditions of employment to Mr. Villaba and Mr. Madsen.

83.     In retaliation for his complaints about age discrimination, PMC retaliated against Mr. Campos, including subjecting him to different terms and conditions of employment and less favorable terms and conditions of employment, and firing him.

84.     PMC engaged in unlawful employment practices involving employment discrimination and retaliation in violation of the ADEA.

85.     PMC's practices have deprived Mr. Campos of equal employment opportunities and adversely affected his status as an employee because of his age.

86.     The unlawful employment practices complained of above were taken because of Mr. Campos' age and in retaliation for his earlier complaints about age discrimination and were and are willful within the meaning of the ADEA.

87.     PMC's acts of discrimination and retaliation were taken knowingly and in reckless disregard of Mr. Campos' rights and constituted willful violations of the ADEA. The reasons that PMC has given for Mr. Campos' discharge were false.

88.     As a result of PMC's discrimination and retaliation, Mr. Campos has suffered and will continue to suffer the loss of wages, benefits, and other damages.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Campos respectfully requests that this Court enter judgment in his favor and requests that:

A.      Grant a cease and desist order against PMC and it officers, managers, and supervisors from violating the ADEA;

B.      Enter appropriate injunctive relief awarding Mr. Campos the backpay, front pay, wages, employment benefits, liquidated damages, and other compensation that he was denied or lost;

C.      Order PMC to pay Mr. Campos damages for the injury or loss he suffered;

D.      Award Mr. Campos all pre-judgment interest to which he is entitled;

E.      Award Mr. Campos reasonable attorney's fees and costs; and

F.      Award such other and further relief as is just and appropriate, including nominal damages.

**COUNT III**
**WRONGFUL DISCHARGE IN VIOLATION OF**
**ILLINOIS PUBLIC POLICY**

89.      Mr. Campos repeats and re-alleges paragraphs 1-7, 16-21, 31-46, 53-54, 57-59, 67, and 73 as if fully set forth herein.

90.      This Court has jurisdiction over this Illinois retaliatory discharge public policy wrongful discharge claim by virtue of 28 U.S.C. §1367.

91.      Mr. Campos was injured on the job in 2011 and again in 2012. He requested that PMC pay him worker's compensation benefits under the Illinois Workers' Compensation Act.

92.      Illinois public policy prohibits an employer from retaliating against an employee who has exercised his rights under the Illinois Workers' Compensation Act.

93.      Illinois public policy and the Illinois Workers' Compensation Act, 820 ILCS 305/4(h) (herein, the "Act") prohibit an employer from interfering with an employee's workers'

16

compensation rights and from discharging an employee because he has exercised his rights under that Act.

94.     PMC had a duty under Illinois law not to discharge Mr. Campos in violation of Illinois public policy.

95. At all relevant times, PMC was an employer within the meaning of the Act as defined in 820 ILCS 305/1 et seq, and Mr. Campos was an employee within the meaning of that Act.

96.     The reasons that PMC gave for Mr. Campos' discharge were false.

97.     In deciding whether Mr. Campos would be paid workers compensation benefits, the Defendant PMC used an insurance adjustor and a case management third party named Encore Unlimited LLC.

98.     Encore Unlimited drafted and sent to the insurance adjustor Progress Service Reports. Encore Unlimited stated that it maintained contact with the insurance adjustor and forwarded all pertinent information in a timely manner.

99.     The insurance adjustor, in turn, sent copies of the Progress Service Reports to the Defendant PMC. Defendant PMC periodically reviewed each of the Progress Service Reports and communicated by e-mail and correspondence about Mr. Campos with its insurance adjustor. The insurance adjustor communicated by e-mail and correspondence about Mr. Campos with Encore Unlimited.

100.    The insurance adjustor and Encore Unlimited LLC were agents of the Defendant PMC.

101.    PMC violated a clear mandate of Illinois public policy by discharging Mr. Campos on June 26, 2015.

102.    PMC discharged Mr. Campos in retaliation for requesting to be paid workers' compensation benefits in violation of Illinois' public policy.

103.    As a consequence of PMC's wrongful discharge, Mr. Campos has been damaged, including suffering a loss of wages and benefits, and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Campos respectfully requests that this Court enter judgment in his favor and against PMC and requests that:

A.    Order PMC to pay Mr. Campos backpay, wages, employment benefits, and other compensation, that he was denied or lost as a result of PMC's actions, including prejudgment interest on such amounts;

B.    Order PMC to pay Mr. Campos compensatory damages, including for the emotional distress damages he suffered;

C.    Order PMC to pay Mr. Campos punitive damages;

D.    Awarding Mr. Campos his costs; and

E.    Awarding such other and further relief as the Court deems necessary and just.

## JURY TRIAL DEMAND

A jury trial is demanded on all counts which are triable by a jury.

Dated: April 15, 2016                          Respectfully submitted,

_____
Marty Denis
Bethany Hilbert
Barlow, Kobata & Denis LLP
525 West Monroe Street, Suite 2360
Chicago, Illinois 60661
(312) 648 – 5570
Attorney No. 34721

*Attorneys for Plaintiff Sergio Campos*